1  Richard D. McCune, Esq., State Bar No. 132124
   rdm@mwtriallawyers.com
2  Jae K. Kim, Esq., State Bar No. 236805
   jkk@mwtriallawyers.com
3  McCUNE & WRIGHT
   2068 Orange Tree Lane, Suite 216
4  Redlands, California 92374
   Telephone: (909) 557-1250
5  Facsimile: (909) 557-1275

6  Attorneys for Plaintiff, JOSHUA P. ENDRES and
   KENDAHL BOOSTROM, on behalf of themselves
7  and all others similarly situated

8

9              UNITED STATES DISTRICT COURT

10          FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12  JOSHUA P. ENDRES and KENDAHL          )  Case No.:  C-06-7019 PJH
    BOOSTROM, as individuals, and on behalf of all  )
13  others similarly situated,              )  **PLAINTIFFS' REPLY TO THE**
                                            )  **DEFENDANT'S OPPOSITION TO**
14             Plaintiffs,                  )  **PLAINTIFFS' MOTION FOR CLASS**
                                            )  **CERTIFICATION; DECLARATION OF**
15      v.                                  )  **RICHARD D. McCUNE; EXHIBITS**
                                            )
16  WELLS FARGO & COMPANY, WELLS            )  **DATE:  December 19, 2007**
    FARGO BANK, N.A., and DOES 1 through 125,  )  **TIME:  10:00 a.m.**
17                                          )  **DEPT:  Courtroom 3, 17th Floor**
               Defendants.                  )
18                                          )  Hon. Phyllis J. Hamilton
                                            )
19  _____)

20  ///

21  ///

22

23

24

25

26

27

28

PLAINTIFFS' REPLY TO THE DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

EXHIBIT 1

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I | INTRODUCTION | 1 |
|  | A. Wells Fargo's Financial Practice | 1 |
|  | B. Plaintiffs' Challenges to Wells Fargo's the Credit Line Access Practice | 2 |
| II | ARGUMENT | 3 |
|  | A. Plaintiffs' Challenge to the Fairness and Legality of Wells Fargo's Credit Line Access Practice and the Resulting Usurious Interest Rates | 3 |
|  | 1. The Challenged Practice | 3 |
|  | 2. The Proposed Class Meets All Criteria for Certification Regarding Plaintiffs' Challenge to the Fairness and Legality of Wells Fargo's Credit Line Access Practice and the Resulting Usurious Interest Rates | 4 |
|  | a. Numerosity | 4 |
|  | b. Common Questions Predominate over Individual Questions | 4 |
|  | c. Typicality and Adequacy of the Class Representatives Supports Class Certification | 5 |
|  | d. The Affirmative Defenses do not Defeat Class Certification | 6 |
|  | e. The Purported Contractual Arbitration Agreement and Class Waiver Does Not Defeat the National Class Allegations | 6 |
|  | f. Problems with the Definition of the Class Are Easily Remedied and Do Not Result in Defeat of Class Certification | 7 |
|  | B. Plaintiffs' Challenge to the Non-Disclosure of Wells Fargo's Credit Line Access Practice | 8 |
|  | 1. Wells Fargo's Practice of Non-Disclosure | 8 |
|  | a. The Written Documents Were Uniform in Non-Disclosure | 8 |
|  | i. The Non-Marketing Documents Were Uniform in Non-Disclosure | 8 |

PLAINTIFFS' REPLY TO THE DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

EXHIBIT 1

ii.  The Marketing Brochures Were Uniform in
Non-Disclosure ........................................................................ 9

b.  Wells Fargo's Instructions related to Oral Representations
were Uniform Non-Disclosure........................................................ 11

c.  The Non-Disclosures Were Uniform to All Customers
Opening Accounts in Wells Fargo Branches ..................................... 11

2.  Statute of Limitations................................................................ 12

3.  Reliance.................................................................................. 13

III  CONCLUSION.................................................................................. 14

EXHIBIT 1

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Eisen v. Carlisle & Jacquelin*
417 U.S. 156, 178 (1974) .................................................................. 3

*El Pollo Loco, Inc. v. Hashim*
316 F.3d 1032 (9th Cir. 2003) .......................................................... 12

*Geraghty v. United states Parole Commission*
579 F.2d 238 (3d Cir. 1978) ............................................................. 12

*Gonzalez v. Proctor & Gamble Co.*
2007 WL 2700954 (S.D. Cal. Sept. 12, 2007) ................................. 13

*In re Baldwin-United Corp. Litig.*
122 F.R.D. 424 (S.D.N.Y. 1986) ...................................................... 10

*In re Hartford Sales Practices Litigation*
192 F.R.D. 592 (D. Minn. 1999) ...................................................... 13

*In re Life USA Holding, Inc.*
242 F.3d 136 (3rd Cir. 2001) ........................................................... 13

*Klay v. Humana, Inc.*
382 F.3d 1241 (11th Cir. 2004) ......................................................... 4

*Long v. Hewlett-Packard Co.*
2007 WL 2994812 (N.D. Cal. July 27, 2007) ............................ 13, 14

*Lozano v. AT&T Wireless Services, Inc.*
504 F.3d 718 (9th Cir. 2007) ..................................................... 6, 7, 14

*Martin v. Dahlberg, Inc.*
156 F.R.D. 207 (N.D. Cal. 1994) ..................................................... 13

*Moore v. PaineWebber, Inc.*
306 F.3d 1247 (2d Cir. 2002) ........................................................... 13

*Newman v. RCN Telecom Servs., Inc.*
238 F.R.D. 57 (S.D.N.Y. 2006) ........................................................ 13

*Poulos v. Caesars World, Inc.*
379 F.3d 654 (9th Cir. 2004) ........................................................... 13

PLAINTIFFS' REPLY TO THE DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

**EXHIBIT 1**

*Prado-Steiman v. Bush*
    221 F.3d 1266 (11th Cir. 2000) ................................................................. 7

*Pruitt v. Allied Chemical Corp.*
    85 F.R.D. 100 (D.C. Va. 1980) .................................................................. 12

*Shroyer v. New Cingular Wireless Services, Inc.*
    498 F.3d 976 (2007) ................................................................................... 7

*Suh v. Yang 987 F.Supp.*
    783 (N.D. Cal. 1997) .................................................................................. 6

*Ting v. AT&T*
    319 F.3d 1126 (9th Cir. 2003) .................................................................. 7

**STATE CASES**

*Caro v. Procter & Gamble Co.*
    18 Cal. App. 4th 644 (1993) ..................................................................... 14

*McAdams v. Monier*
    151 Cal. App. 4th 667 (2007), review granted 67 Cal. Rptr. 3d 1 (Cal. 2007) ............... 13

*San Francisco Unified School District v. W.R. Grace & Co.*
    37 Cal. App. 4th 1318 (1995) ................................................................... 12

**FEDERAL STATUTES**

12 U.S.C. §§ 85 & 86 .................................................................................. 6, 7

PLAINTIFFS' REPLY TO THE DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

EXHIBIT 1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I

## INTRODUCTION

**A.    Wells Fargo's Financial Practice**

Defendants Wells Fargo & Company and Wells Fargo Bank, N.A. (hereinafter "Wells Fargo" or the "Wells Fargo Defendants") mischaracterize the financial product and practice that is the subject of this lawsuit. The financial vehicle at issue is a line of credit that Wells Fargo opened for Plaintiffs. This line of credit was in the form of a credit card. Wells Fargo provided three methods for Plaintiffs to access that line of credit: 1) present the card to vendors to make a credit card purchase; 2) use the card to obtain cash directly from Wells Fargo through what is called a cash advance; and 3) access the credit line by writing a check, making an ATM withdrawal, or making a debit card purchase beyond the balance in the Wells Fargo checking account. The term used by Wells Fargo to describe this third way of accessing the credit line is "overdraft protection," but that is simply a marketing term that Wells Fargo uses to sell the credit card.

Each of these three methods to access the line of credit is equally appropriate. Each of these three methods has been pre-approved by Wells Fargo. None of these methods involve any of the personal financial responsibility issues that are presented when a customer writes a check on an account with inadequate funds and no established link to a line of credit. In such a scenario, Wells Fargo, through no doing of its own, is faced with the choice of returning the check or providing an impromptu line of credit without any request, application or approval process. This scenario is not implicated in any way in this lawsuit. Rather, this case only deals with checking accounts that have been linked to credit card lines of credit and, more specifically, deals only with the finance costs associated with using the third method to access the credit line.

Wells Fargo's practice was to assess a finance charge of $10 each day there is a transfer as a result of the third method, irrespective of the amount being transferred, and to transfer only enough funds to bring the checking account to $0, thereby enhancing the opportunity for Wells Fargo to charge additional $10 fees in the coming days (hereinafter the "Credit Line Access Practice" or the "Practice").

PLAINTIFFS' REPLY TO THE DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

EXHIBIT 1

**B.    Plaintiffs' Challenges to Wells Fargo's the Credit Line Access Practice**

Plaintiffs' Second Amended Complaint raises three distinct and independent challenges to Wells Fargo's Credit Line Access Practice:

1)    the Credit Line Access Practice constitutes an illegal and unfair business practice;

2)    the Credit Line Access Practice results in the assessment of usurious finance charges; and

3)    Wells Fargo failed to disclose to consumers the charges associated with the Credit Line Access Practice.

To decide these issues, the trier of fact will have to first conduct an analysis to determine whether Wells Fargo's Credit Line Access Practice is unfair and illegal. The trier of fact will then need to conduct an analysis to determine, irrespective of the fairness or unfairness of the Practice as a whole, whether the Practice resulted in finance charges that were usurious, thereby being unconscionable and illegal.

Finally, irrespective of whether the Practice was fair or unfair and whether or not the assessed finance charges were usurious, the final issue to be determined by the trier of fact is whether Wells Fargo fairly characterized and adequately disclosed the finance charges related to its Credit Line Access Practice.

In its opposition, Wells Fargo attempts to narrow Plaintiffs allegations to only the non-disclosure issue. This is inaccurate. Plaintiff has three independent grounds for challenging Wells Fargo's Practice. These are three distinct and different practices that must be analyzed by the jury and require individual analysis by the Court in determining the suitability of the case for class certification.

As the following will set forth in greater detail, Plaintiffs submit that appropriate analysis results in a finding that all three grounds meet the test for class certification. However, assuming *arguendo* that Wells Fargo is correct that variations in disclosure defeat class certification (a point which Plaintiff strenuously denies), which is the heart of Wells Fargo's argument against the appropriateness of class certification, the case must nevertheless go forward on Plaintiffs claims of illegal and unfair business practice and unconscionable interest rates.

EXHIBIT 1

## II

## ARGUMENT

**A.  Plaintiffs' Challenge to the Fairness and Legality of Wells Fargo's Credit Line Access Practice and the Resulting Usurious Interest Rates**

**1.    The Challenged Practice**

The challenged practice is the legality of charging a finance transfer fee of a flat $10 irrespective of the amount being transferred, coupled with transferring exactly enough to bring the account balance to $0.  The reason that Practice is unfair is that the $10 is unrelated to the amount of transfer, as illustrated by Plaintiff Joshua Endres being charged $10 for a transfer of $.92 (April 4, 2004 Account Summary, Ex. A to McCune Decl.),and the transfer of the exact amount increases the likelihood that with another small purchase the following day, the customer will get multiple $10 charges as illustrated by Josh Endres in the same statement incurring seven separate charges of $10 totaling $70 for transferring $77.67.

Wells Fargo, despite acknowledging the motion for class certification is not the proper format to challenge Plaintiffs' right to have a jury determine the fairness and legality of its practice, spends a considerable amount of the brief defending the practice.  This defense of its practice is rather peculiar given Wells Fargo's acknowledgement that it has since changed the practice.  While Defendant takes exception with Plaintiffs taking credit for the change (it occurred after Plaintiffs' sent notice of intent to sue), its own stated reason for the change of policy of transferring exactly enough to bring the account to $0 to transferring a minimum of $25 was to benefit the customers (Wells Fargo's Responses to Special Interrogatories, Resp. 14, Ex. B to McCune Dec.)

Wells Fargo chose to limit discovery to class certification issues until after class certification.  To the extent Defendant believes it should prevail on this theory as a matter of law, after merit based discovery is conducted, Defendant will have the right to file a motion for summary judgment.  Plaintiffs welcome the opportunity to present the Court with the support for the illegality of this action.  This is simply not the right time or vehicle to challenge the merits of Plaintiffs claim, and is why the Trial Courts are instructed not to weigh the merits of the claim while determining the adequacy of the case for class certification *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).

EXHIBIT 1

2.  **The Proposed Class Meets All Criteria for Certification Regarding Plaintiffs' Challenge to the Fairness and Legality of Wells Fargo's Credit Line Access Practice and the Resulting Usurious Interest Rates**

   a.  **Numerosity**

   Wells Fargo concedes, as it must, that the Proposed Class satisfies the numerosity requirement and that litigation of individual claims would be impossible for individual customers as well as the Judicial system.

   b.  **Common Questions Predominate over Individual Questions**

   The bulk of Wells Fargo's opposition to class certification relates to its position that individual questions predominant over common questions. To support this argument, Defendant points to a number of issues it contends are individual to each proposed class members. Almost without exception, those alleged individual questions relate solely to Plaintiffs' challenge based on the non-disclosure of the cost of the Wells Fargo's Credit Line Access Practice, having nothing to do with Plaintiffs' other challenges to the fairness and legality the Practice or the resulting usurious finance charges. Wells Fargo's argument relating to individual vs. common questions in the context of Plaintiffs' non-disclosure allegation will be addressed in section B. However, with regard to Plaintiffs' challenge to the fairness and legality of the Practice itself and the resulting usurious interest rates, there can be no legitimate dispute that common issues prevail.

   Defendant also does not dispute the Practice itself was the same for each class member and was administered the same for each class member. Defendant's argument of individual questions centers on the financial effect the Practice had on each class member.

   Where a reasonable methodology works for class-wide issues, it is no impediment to class certification. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1259 (11th Cir. 2004). In the instant case, there may be disagreements between the parties as to who has been damaged and the method of calculating damages, this dispute is not resolved by individual analysis of each customer. That argument may have had merit in the pre-computer era, but it does not have any merit now. Either the Court or the Jury will determine what must be shown for an individual Class Member to be damaged. That is the common question. The individual effect on the Class Members does not require any analysis except as to plug the Court's finding in Wells Fargo's database. The information relating to the overdraft amounts, the

- 4 -

**EXHIBIT 1**

days of the overdrafts, the fees charged for the overdraft and the interest charged for the transferred amount are maintained in Wells Fargo's database. With that information, it is simply for the computer programmers to run an appropriate query and identify those customers who meet the Court's criteria.

The amount of damages is accessed the same way. The Court will determine the common question of the method of calculating damages, and a computer query will provide the answers for each individual customer. It does not require an individual by individual analysis.

### c.  Typicality and Adequacy of the Class Representatives Supports Class Certification

Ironically, Defendant cloaks itself in concern over the ability of the class representatives to adequately represent the class as a way to attempt to destroy the class interests. However, that concern over the ability of the class representatives to adequately represent the class certainly has no merit to the challenge of the Practice itself and the resulting usurious interest. While perhaps a closer question on the challenge to disclosure, it does not defeat certification on the disclosure issue.

One of the Wells Fargo's attacks is that Plaintiff Boostrom was not damaged because her parents are paying her credit card bill while she is in college. Defendant is wrong on the law. This credit card account for which the charges are assessed, Plaintiff Boostrom is legally obligated to pay. Whether someone with no obligation to pay it does in fact pay it is immaterial to whether she is responsible for the charges.

Second, while Ms. Boostrom does not currently pay her credit card bill, she will undertake that obligation shortly (Transcript of Kendahl Boostrom, p. 114:24-115:10, Ex. C to McCune Decl.) As she carries a balance forward, those transfer charges that have been incurred but have not yet been paid will continue to be the responsibility of Ms. Boostrom to pay in the future. As she will have to pay the charges, she has been damaged.

Another attack made by Wells Fargo relates to a claim that Plaintiff Joshua Endres claim is barred by the statute of limitation and thus he is barred from bringing a claim and thus has not been damaged. Once again, the argument made by Defendant relates to the disclosure claim and had no applicability to challenging the practice itself claims. Josh Endres was damaged by this Practice in March of 2004 (Ex. A to McCune Decl.), that is within all the applicable statute of limitations.

PLAINTIFFS' REPLY TO THE DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

EXHIBIT 1

d.    **The Affirmative Defenses Do Not Defeat Class Certification**

The primary basis for Wells Fargo's claim that affirmative defenses make certification inappropriate is the  claimed statute of limitations defense.  Again, Defendant mixes Plaintiffs' claims. For the challenge to the Practice and the usurious interest rates, each time Wells Fargo engaged in the Practice, it triggers a new claim.  *See Suh v. Yang*, 987 F. Supp. 783, 795-96 (N.D. Cal. 1997) (Plaintiffs' claim for unfair competition based on trademark infringement is not barred by the four year statute of limitations since the alleged wrongs are multiple, continuous acts, and some of these acts have occurred within the limitations period).

As customer knowledge of the occurrence of the Practice is not an affirmative defense to an illegal practice, the only relevant statute of limitations analysis is which customers were subject to the practice within the applicable statute of limitations.  Once the Court determines the method for establishing the statute period, then it is again simply a computer analysis that identifies the names from existing information held by Wells Fargo of those customers who are within the Court determined statute of limitations period.

Defendants also raise the "voluntary payment" affirmative defense.  Plaintiffs believe this affirmative defense is without merit.  However, if the Court determines that it is in fact meritorious, the effect of that finding is a common question.  How it affects individuals in the class will be determined by the resolution of the common question and again a computer analysis will simply identify those class members affected by the Court's determination.

e.    **The Purported Contractual Arbitration Agreement and Class Waiver Does Not Defeat the National Class Allegations**

First, it is important to point out that Defendant raises this position solely on the usurious interest rate allegation that arises under National Banking Act, Section 85.  Defendants do not raise this defense to a national class in relation to the challenge to the Practice and the non-disclosure of the Practice. Defendants also do not dispute that Wells Fargo is headquartered in California, and thus, California has the most interest in curbing unfair business practices of its corporate citizen's, providing the basis for a national class action.

Defendants rely on *Lozano v. AT&T Wireless Services, Inc.* to support their contention that Plaintiffs' NBA, Section 85 claim cannot warrant nationwide class treatment because an individualized

EXHIBIT 1

1   analysis of each state's laws with regards to the unconscionability of arbitration and class action waiver

2   clauses is required.  504 F.3d 718.

3          However, the case at hand is critically distinguishable from *Lozano* in that *Lozano* involved the

4   determination that FCA claims do not preclude arbitration waiver clauses.  Meanwhile, the case at hand

5   involves NBA, Section 85, which regulates usury rates based on the laws of the bank's "home" state.  It

6   is Plaintiffs' contention that Wells Fargo's home state for purposes of NBA, Section 85 is California.

7   Therefore, NBA, Section 85 requires the application of California law.

8          Under California law, arbitration agreements and class waiver clauses are unconscionable when

9   contained in adhesion contracts.  *Ting v. AT&T*, 319 F.3d 1126, 1150 (9th Cir. 2003); *see Shroyer v.*

10  *New Cingular Wireless Services, Inc.*, 498 F.3d 976, 987-88.  As all of Wells Fargo's relevant contracts

11  in this action are adhesive, any arbitration agreement and class action waiver clause are not enforceable

12  under California law.  Because California law is to be applied to the National Class Members' NBA,

13  Section 85 claims, then such agreements are not enforceable against any nationwide class member.

14          **f.      Problems with the Definition of the Class Are Easily Remedied and Do Not**
            **Result in Defeat of Class Certification**

15          Here, Defendant correctly points out that no Class Representative meets the definition of

16  National Class as described in the moving papers because the National Class definition excludes

17  California customers.  Plaintiff admits this anomaly was the result of an oversight in defining the class.

18  Defendant further claims that the definition is vague as to "student customer."  Plaintiff also agrees that

19  this definition can be improved.  An amendment to class definition is permissible as district courts have

20  broad discretion to alter or amend the definition of a class at any time throughout the litigation.  *Prado-*

21  *Steiman v. Bush*, 221 F.3d 1266, 1273 (11th Cir. 2000).

22          The problems with the definition of the class can be easily remedied and Plaintiffs propose

23  amending its class definition consistent with the definition in the complaint to read:  "The National Class

24  consists of all Wells Fargo customers residing in the United States who obtained overdraft protection

25  through their Wells Fargo College or Student credit card that signed up for the program from January 1,

26  2002 through December 30, 2005 and received their first overdraft protection transaction fee after

27  October 2, 2002."

28

EXHIBIT 1

1   **B.   Plaintiffs' Challenge to the Non-Disclosure of Wells Fargo's Credit Line Access Practice**

2   **1.   Wells Fargo's Practice of Non-Disclosure**

3   With regard to the issue of non-disclosure, Plaintiffs allege that while Wells Fargo promoted the

4   benefits of the credit card for its features, specifically including being able to automatically access its

5   credit line instead of overdrafting the checking account, it **omitted disclosures at the point of sale**

6   **related to the finance cost** of accessing the credit card's credit line through this approved and perfectly

7   acceptable method.  Whether that constitutes an unfair and illegal practice is a merit-based question for a

8   different day.

9   The bulk of Wells Fargo's opposition to the motion for class certification is based on what it

10   characterizes as variances in the information provided to consumers regarding the Credit Line Access

11   Practice, resulting in individual questions predominating over common questions.  Wells Fargo would

12   have this Court believe that some consumers were given full information about all finance costs

13   associated with the Credit Line Access Practice, while others were not.  As the following will

14   demonstrate, Wells Fargo's failure to disclose the finance costs associated was uniform to all written

15   materials provided to its customers prior to the point of sale of the "overdraft protection" and to all

16   customers that purchased this financial product at a Wells Fargo branch, store, or sales kiosk.  When

17   properly viewed as an issue of _non-disclosure_ of finance charges, it is clear that the practice meets the

18   uniformity and common question criteria.

19   **a.   The Written Documents Were Uniform in Non-Disclosure**

20   **i.   The Non-Marketing Documents Were Uniform in Non-Disclosure**

21   First, in its opposition, Wells Fargo does not dispute that for customers that obtained their credit

22   card at one of the Wells Fargo stores, those customers uniformly received, before contracting with Wells

23   Fargo for the credit card, the "Checking, Savings & More brochure" that outlined the costs associated

24   with various programs.  Wells Fargo does not dispute that this document was uniform in not disclosing

25   the finance charges associated with the disputed practice.

26   Wells Fargo further does not dispute that for each customer opening the account at a store, these

27   customers uniformly received a "Consumer Account Fee and Information Schedule" and that each of

28   these documents contained the same disclosures and non-disclosures.  In a footnote, Wells Fargo does

EXHIBIT 1

1  dispute that this document is provided after the application, but then states it is not relevant. For a

2  different day, the issue of whether this document is to be considered before or after the parties enter into

3  a contract is relevant as it bears on the merit issue of non-disclosure. There can be no dispute however,

4  that for each of student customers who obtained this credit card in the stores, that they uniformly

5  received this document and that the <u>disclosures and non-disclosures</u> was the same for each customer.

6       Wells Fargo also does not dispute that after opening the account, but before leaving the store,

7  each customer received a document entitled "Credit Card Summary of Account Terms and Other

8  Information", and that the disclosures and non-disclosures in this document were uniform.

9       In summary, for those customers opening the account in the store, Wells Fargo does not dispute

10  that they were provided uniform documents as it relates to the disclosure and non-disclosure

11  information. Wells Fargo does however, contend that the information contained in the marketing

12  brochures varied between the proposed class members.

13            **ii.**      **The Marketing Brochures Were Uniform in Non-Disclosure**

14       In its opposition, Wells Fargo goes to great lengths to point out that marketing brochures from

15  different regions of the country produced at different times over the class period were different in their

16  content. Plaintiffs do not dispute that fact, but rather contend that it is not relevant to the issue of non-

17  disclosure. What is relevant is that the marketing brochures produced in different regions at different

18  times were <u>all uniform in their failure to disclose the finance costs of the Program</u>. As testified to by

19  Wells Fargo employee, the marketing people had the authority to vary the pictures and marketing

20  message, but the disclosure language was mandated by Corporate (Transcript of Aaron Kraljev, 63:5 –

21  64:11, Exh. D to McCune Decl.)

22       To support this position, Plaintiffs provided the collection of the marketing brochures produced

23  by Wells Fargo in discovery, each demonstrating the non-disclosure of the finance charge associated

24  with the program. In the opposition, Wells Fargo counters this evidence presented by Plaintiffs by

25  boldly stating that "some [brochures] expressly mentioned that there was a fee for the service, while

26  others were silent on the subject", (Opp. p.6:9-10, citing the Videle Declaration, paragraph 10.) Wells

27  Fargo then goes on to cite the specific language found in these documents.

28

EXHIBIT 1

When you follow the Videle declaration trail however, it is obvious that Wells Fargo is attempting to mislead the Court on this issue. First, while making the statement that some marketing brochures contained disclosures and others did not, it only provided one brochure for that bold statement (Exh. 10 to Videle Decl.) To be sure, if Wells Fargo had additional brochures that mentioned fees, it would have provided them to the Court.

Second, while Wells Fargo stated that its support was a "marketing brochure" with disclosures, what it actually produced on this important point was an "educational brochure" that was designed for existing customers. In discovery, Plaintiffs asked for copies of all marketing brochures and Wells Fargo complied (Wells Fargo Response to Plaintiffs Request for Production of Documents, Set Two, Request 32, Exh. E to McCune Decl.) sending the documents produced by Plaintiff in the motion . However, in response to the discovery request seeking all marketing brochures, Wells Fargo did not produce the subject one document that it now contends supports its broad position that some marketing brochures made disclosures and some did not. It only produced the document after the close of discovery with a letter noting that it was a document not requested by Plaintiffs (Jolley Letter, Exh F to McCune Decl.) In either reading the educational brochure or accepting Wells Fargo's admission that the educational brochure is not a marketing brochure, it is clear that this document was available to existing customers and was not a marketing brochure providing support that some marketing brochures provided disclosures.

Wells Fargo's attempt to mislead on this issue makes clear that it does not have any evidence to counter Plaintiffs evidence that the marketing brochures were uniform in their non-disclosure of the costs of this Program. The issue of whether all customers saw these marketing brochures is not relevant to a non-disclosure case, unless there were disclosures on some brochures and not others. As the non-disclosures were uniform, the marketing brochures meet the uniformity test. *See In re Baldwin-United Corp. Litig.*, 122 F.R.D. 424, 427 (S.D.N.Y. 1986) (in certifying class, the court held that "even proof of a material variance among the representations will not defeat the class if certain omissions, inferred from their absence in the [sales] literature, were common to all").

///

- 10-

EXHIBIT 1

1

### b.   Wells Fargo's Instructions related to Oral Representations were Uniform on Non-Disclosure

2

In Wells Fargo's section outlining how the oral statements defeat uniformity, they contend that their training materials are roadmaps and not scripts.[1]  What is clear that the Roadmap is uniform in that it does not instruct the salesperson to disclose the financial costs associated with this Program.

What is more important than the training material, is that Wells Fargo does not dispute Plaintiffs contention that the Sales Platform software program, which is used by each salesperson in selling the "overdraft Protection" in stores and contains prompts for mandatory disclosures, does not mandate disclosure of the financial cost of this Program.

### c.   The Non-Disclosures Were Uniform to All Customers Opening Accounts in Wells Fargo Branches

As the foregoing establishes, Wells Fargo's failure to disclose the finance costs of its Credit Line Access Practice was uniform to all customers that signed up for the credit card and corresponding "overdraft protection" in person at a Wells Fargo branch.  In its opposition, however, one of the principal issues raised by Wells Fargo was that there was explicit disclosure to customers that opened the credit line by telephone or over the internet and, therefore, a variance existed that should defeat class certification.  The position is lacks merit for several reasons.

First, assuming the truth of Wells Fargo argument, it would only affect the class as it relates to Plaintiffs' challenge to Wells Fargo's Credit Line Access Practice based on non-disclosure.  It would not impact Plaintiffs' challenges to the fairness and legality of the Practice or the resulting usurious interest rates.  Therefore, this argument cannot serve as the basis for denying certification of the class as a whole.

Second, assuming *arguendo* that Defendant's argument has merit, the answer is not to deny certification of the class on the issue of non-disclosure, but rather, to break these small discreet groups of customers who signed up with Wells Fargo on the telephone or over the internet into subclasses.  This is especially true because those customers who opened their accounts by internet or telephone make up a small percentage of all the customers who purchased the "overdraft protection."  In discovery responses,

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' REPLY TO THE DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

EXHIBIT 1

1   Wells Fargo provided information that the vast majority of customers who obtained this financial

2   product opened them up in stores, and it was a small percentage of customers who opened the account

3   online or by telephone (para. 3, to McCune Decl.)

4        The result is these differences may result in a need for subclasses between the vast majority of

5   customers who signed up in store and the two small groups of customers that did not open the account in

6   the store.  Rule 23(c)(4) provides that "[w]hen appropriate, an action may be brought or maintained as a

7   class action with respect to particular issues" or "a class action may be divided into subclasses that are

8   each treated as a class under this rule."  This rule requires the court to consider employment of these

9   restructuring measures where an apparently unmanageable class action could be converted to a

10  manageable one.  *Pruitt v. Allied Chemical Corp.*, 85 F.R.D. 100, 111 (D.C. Va. 1980); *see Geraghty v.*

11  *United states Parole Commission*, 579 F.2d 238, 253 (3d Cir. 1978) ("[a] forbearance to consider these

12  options constituted a failure to properly exercise discretion.".)

13       **2.       Statute of Limitations**

14       Defendants contend that Plaintiff Endres is not a typical class representative because his non-

15  disclosure claims are barred by statute of limitations.  However, the statute of limitations does not begin

16  to run and no cause of action accrues in a tort action until damage has occurred; if the last element of the

17  cause of action to occur is damage, the statute of limitations begins to run on the occurrence of

18  "appreciable and actual harm."  *San Francisco Unified School District v. W.R. Grace & Co.*, 37

19  Cal.App.4th 1318, 1326 (1995); *see El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1039 (9th Cir. 2003)

20  (statute of limitations begins to run upon the occurrence of the last element essential to the cause of

21  action, and the discovery rule applies to UCL claims if the harm flowing from those breaches will not be

22  reasonably discoverable" by plaintiff until a future time).

23       Here, Plaintiff Endres was first damaged as a result of Wells Fargo's non-disclosure on

24  November 2, 2002, when he first incurred an overdraft protection fee, so this would be date that the

25  UCL statute of limitations began.  As this suit was commenced on October 2, 2006, Plaintiff Endres

26

27

28  [1] Plaintiff notes that the document relied upon for this position was so secret that Defendant contended in discovery that only attorneys could review, yet produced it without seeking any protection from making it a public record, making a sham of Defendants claim of confidential documents

- 12 -

**EXHIBIT 1**

1   filed this action within the four-year statute of limitations and is therefore, typical of other class

2   members.

3   **3.   Reliance**

4   The 90% of the proposed class members that opened the account at a Wells Fargo branch each

5   received the same written materials at point of sale. Also, they each had access to marketing materials

6   that were uniformly silent on the financial cost of the Practice. Each were sold by a uniformly trained

7   salesperson, relying on a uniform software program providing uniform prompts for the oral discussions

8   relating to opening the account. Neither the training program nor the computer program prompted the

9   salesperson to make oral disclosures relating to the actual finance cost of Wells Fargo's Credit Line

10  Access Practice. Moreover, the deposition testimony of Wells Fargo's own employee made it clear that

11  Wells Fargo sales representatives had no discretion when it came to the issue of disclosures.

12  Therefore, Defendants' contention that the class members received a "widely disparate mix of

13  information" and therefore, require an examination of whether each plaintiff relied upon the varying

14  information is erroneous. Accordingly, Defendants' reliance on *Moore v. PaineWebber, Inc.*, 306 F.3d

15  1247, 1253 (2d Cir. 2002); *Gonzalez v. Proctor & Gamble Co.*, 2007 WL 2700954 (S.D. Cal. Sept. 12,

16  2007); *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 665 (9th Cir. 2004); *Newman v. RCN Telecom*

17  *Servs., Inc.*, 238 F.R.D. 57, 77 (S.D.N.Y. 2006); *Martin v. Dahlberg, inc.* 156 F.R.D. 207, 216 (N.D.

18  Cal. 1994); *In re Life USA Holding, Inc.* 242 F.3d 136 (3rd Cir. 2001); and *In re Hartford Sales*

19  *Practices Litigation*, 192 F.R.D. 592 (D. Minn. 1999) is misguided, as all of these cases involve

20  disparate marketing materials and/or oral representations.

21  Defendants further contend that even apart from variations in the information provided to class

22  members, individual issues of reliance and causation predominate. First, Defendants argue that

23  Plaintiffs would have to show that each class member relied on the information provided and omitted

24  regarding the program. However, an "inference of common reliance" may be applied to class actions

25  based on UCL and CLRA to satisfy Proposition 64's "actual reliance" requirement where there is a

26  material misrepresentation consisting of a failure to disclose a particular fact. *McAdams v. Monier*, 151

27  Cal.App.4th 667 (appeal pending in the Supreme Court of California). Here, as Wells Fargo uniformly

28

PLAINTIFFS' REPLY TO THE DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

EXHIBIT 1

1  omitted material terms of the program to all class members, an inference of common reliance is

2  appropriate here.

3        Furthermore, the Northern District of California has applied the "reasonable consumer" standard

4  when determining whether class members actually relied on the materials provided. *See Long v.*

5  *Hewlett-Packard Co.*, 2007 WL 2994812 (N.D. Cal. July 27, 2007) (reliance under UCL and CLRA is

6  not found where a "reasonable consumer" could not have relied on generalized, vague and unspecified

7  assertions in marketing materials in making purchasing decisions.)  Under neither the "inference of

8  common reliance" standard nor the "reasonable consumer" standard would Plaintiffs need to show

9  whether each individual class members relied on Wells Fargo's omissions.

10        Finally, Defendants contend that the need for inquiry into individualized circumstances is acute

11  where full and accurate information was provided.  However, because Defendants did not fully and

12  adequately disclose the terms of the program, Defendants' argument fails.  Therefore, the cases which

13  Defendants cite to support their argument (*Caro v. Procter & Gamble Co.*, 18 Cal.App.4th 644 (1993)

14  and *Lozano v. AT&T Wireless Servs., Inc.*, 2007 WL 2728758 (9th Cir. Sept. 20, 2007)) are irrelevant to

15  this issue.  If Defendant can make such a showing they will be able to defeat the class claim because of

16  the uniformity of the information provided to class members.

17                                      **III**

18                                 **CONCLUSION**

19        For the foregoing reasons listed, Plaintiffs respectfully request that the Court certify the class as

20  both a California and National class.

21  DATED:  December 14, 2007.                    McCUNE & WRIGHT, LLP

22

23                                  BY: _____

24                                       Richard D. McCune
                                         Attorney for Plaintiffs
25

26

27

28

PLAINTIFFS' REPLY TO THE DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

EXHIBIT 1

1   RICHARD D. McCUNE, Esq., State Bar No. 132124
    rdm@mwtriallawyers.com
2   JAE (EDDIE) K. KIM, Esq., State Bar No.: 236805
    jkk@mwtriallawyers.com
3   McCUNE & WRIGHT
    2068 Orange Tree Lane, Suite 216
4   Redlands, California 92374
    Telephone: (909) 557-1250
5   Facsimile: (909) 557-1275

6   Attorneys for Plaintiffs, JOSHUA P. ENDRES and KENDAHL BOOSTOM,
    as individuals, and on behalf of all others similarly situated

7

8                       UNITED STATES DISTRICT COURT

9                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  JOSHUA P. ENDRES and KENDAHL          )  Case No.:  C-06-7019 PJH
    BOOSTROM, as individuals, and on behalf of all  )  CLASS ACTION
12  others similarly situated,            )
                                          )  **DECLARATION OF RICHARD D. McCUNE**
13                  Plaintiffs,           )  **IN SUPPORT OF PLAINTIFFS' REPLY TO**
                                          )  **DEFENDANTS OPPOSITION TO**
14           v.                           )  **PLAINTIFFS' MOTION FOR CLASS**
                                          )  **CERTIFICATION; EXHIBITS**
15  WELLS FARGO & COMPANY, et al.         )
                                          )  **DATE:  December 19, 2007**
16                  Defendants.           )  **TIME:  9:00 a.m.**
                                          )  **DEPT:  Courtroom 3, 17th Floor**
17                                        )
                                          )  Hon. Phyllis J. Hamilton
18                                        )

19

20  I, RICHARD D. McCUNE, declare:

21     1.     I am an attorney licensed to practice law before all of the courts of the State of California and

22            I am a partner of McCune & Wright, LLP, counsel of record for Plaintiffs.    The following

23            facts are within my personal knowledge or based on records and files at my law firm, and, if

24            called upon as a witness, I could and would testify competently thereto.

25     2.     Exhibit A is a true and correct copy of Joshua Endres' credit card statement for the period

26            ending April 2, 2004.

27     3.     Defendant produced in special interrogatory responses designated as "confidential",

28            information regarding the number of customers who obtained the Student Credit Card by

                                          - 1 -

EXHIBIT 1

1  applying in the store, by telephone and over the internet. The information provided in the

2  "confidential" special interrogatories was that the vast majority of customers who obtained

3  the Student Credit Card opened them up in stores, and it was a small percentage of customers

4  who opened the account online or by telephone. Plaintiff has not attached the actual

5  document so as to not violate the stipulated protective order, but that it is available for the

6  Court's in-camera review if requested by the Court.

7  4.  Exhibit C is a true and correct copy of selected pages from the deposition transcript of

8  Kendahl Boostrom.

9  5.  Exhibit D is a true and correct copy of selected pages from the deposition transcript of

10  Michael Kraljev.

11  6.  Exhibit E is a true and correct copy of selected portions of Wells Fargo's Response and

12  Objections to Plaintiffs' Request for Production of Documents, Set Two.

13  7.  Exhibit F is a true and correct copy of the November 5, 2007 letter received from David

14  Jolly.

15  I so declare the above is true and correct under penalty of perjury under the laws of the United

16  States. Executed this 14th day of December, 2007, at Redlands, California.

17

18

19  Richard D. McCune

20

21

22

23

24

25

26

27

28

- 2 -

DECLARATION OF RICHARD D. McCUNE IN SUPPORT OF PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION; EXHIBITS

EXHIBIT 1

Additional Information Regarding
Account Number ████████████████
Statement Date:      04/02/04

**Transactions**

| Trans | Post | Reference Number | Description | Credits | Charges |
|-------|------|------------------|-------------|---------|---------|
| 03/04 | 03/04 | 7446539EGEHM6P3N1 | OVERDRAFT TO 1007796186 | | 18.24 |
| 03/04 | 03/04 | | CASH ADVANCE TRANSACTION*FINANCE CHARGE* | | 10.00 |
| 03/09 | 03/09 | 7446539EMEHM6RLGT | OVERDRAFT TO 1007796186 | | 0.92 |
| 03/09 | 03/09 | | CASH ADVANCE TRANSACTION*FINANCE CHARGE* | | 10.00 |
| 03/10 | 03/10 | 7446539ENEHM6RY93 | OVERDRAFT TO 1007796186 | | 11.11 |
| 03/10 | 03/10 | | CASH ADVANCE TRANSACTION*FINANCE CHARGE* | | 10.00 |
| 03/11 | 03/11 | 7446539EPEHM6T81V | OVERDRAFT TO 1007796186 | | 1.71 |
| 03/11 | 03/11 | | CASH ADVANCE TRANSACTION*FINANCE CHARGE* | | 10.00 |
| 03/25 | 03/25 | 7446539F525VFZ2QK | PAYMENT THANK YOU | 48.00 | |
| 03/31 | 03/31 | 7446539FBEHM6ZBQ5 | OVERDRAFT TO 1007796186 | | 29.38 |
| 03/31 | 03/31 | | CASH ADVANCE TRANSACTION*FINANCE CHARGE* | | 10.00 |
| 04/01 | 04/01 | 7446539FQEHM6ZM4B | OVERDRAFT TO 1007796186 | | 14.94 |
| 04/01 | 04/01 | | CASH ADVANCE TRANSACTION*FINANCE CHARGE* | | 10.00 |
| 04/02 | 04/02 | 7446539FDEHM6ZYWT | OVERDRAFT TO 1007796186 | | 1.37 |
| 04/02 | 04/02 | | CASH ADVANCE TRANSACTION*FINANCE CHARGE* | | 10.00 |
| | | PERIODIC *FINANCE CHARGE* PURCHASES   $0.00 CASH ADVANCE   $9.57 | | | 9.57 |

**Wells Fargo News**

          HAVE YOU FILED YOUR INCOME TAXES YET?   IF YOU'RE EXPECTING A
          TAX REFUND, THINK ABOUT PUTTING THAT REFUND TO GOOD USE BY
          PAYING OFF YOUR BILLS.   THAT WILL FREE UP YOUR CREDIT CARDS
          SO YOU CAN RELY ON THEM WHEN YOU HAVE AN UNEXPECTED EXPENSE.
          AND THE SOONER YOU PAY OFF YOUR BILLS,
          THE MORE YOU SAVE ON INTEREST!

5596 0000 VFD 1   7   2   040402          Page 2 of 2          5581 6540 SS26   O1DE559600000000

CONFIDENTIAL

WFB-E 00359

EXHIBIT A

EXHIBIT 1

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA


JOSHUA P. ENDRES and KENDAHL
BOOSTROM, as individuals, and on
behalf of all others similarly
situated,

                Plaintiffs,

vs.                     No. C-06-7019 PJH

WELLS FARGO & COMPANY; WELLS
FARGO BANK, N.A., and DOES 1
through 125,

                Defendants.

**CERTIFIED COPY**

---


DEPOSITION OF KENDAHL BOOSTROM

San Francisco, California

Friday, September 14, 2007


REPORTED BY:
LYNNE LEDANOIS
CSR No. 6811

Job No. 72545

EXHIBIT C                             EXHIBIT 1

02:18:17　1　would have altered my decision-making process --

02:18:22　2　　　Q　How?

02:18:23　3　　　A　-- of sticking with Wells Fargo.

02:18:27　4　　　Q　How?

02:18:28　5　　　A　Well, because if I had known of the fees, I

02:18:29　6　would not have just jumped right in.

02:18:31　7　　　Q　What would you have done differently?

02:18:33　8　　　A　Gone back home, spoke with my father, and

02:18:38　9　possibly looked to other banks to see if there were

02:18:42　10　similar fees, if this was a normal thing, or, you know,

02:18:49　11　if there was something out there that was better suited

02:18:52　12　for me.

02:18:52　13　　　Q　Did you do that once you did find out about the

02:18:54　14　fees?

02:18:55　15　　　A　No.

02:18:55　16　　　Q　Why not?

02:18:58　17　　　A　Because it wouldn't have made a difference.  I

02:19:01　18　already had a credit card again with a balance on there,

02:19:04　19　and I felt like it would have been more trouble for me

02:19:08　20　personally to close an account with Wells Fargo and pay

02:19:14　21　off that balance, which I could not afford, and open

02:19:19　22　up -- look for a new bank and open up a brand-new

02:19:23　23　account.

02:19:24　24　　　Q　I thought your parents were paying your credit

02:19:27　25　card bills.

EXHIBIT C　　　　　　　　　　　EXHIBIT 1

02:19:29  1          MR. WRIGHT:  Objection, argumentative, asked

02:19:30  2   and answered.  And it's not a question.

02:19:33  3          THE WITNESS:  Well --

02:19:34  4   BY MS. WINNER:

02:19:34  5      Q    Am I wrong about that?

02:19:35  6      A    No, certainly not, but I will be paying for

02:19:37  7   them.  And I'm trying to learn how to do that.

02:19:40  8   Unfortunately -- fortunately for me, they're still my

02:19:45  9   financial support, but they won't always be there, and I

02:19:48  10  will have to pay for these things.

02:19:50  11     Q    My question is, why would it have been too much

02:19:53  12  trouble to close your account with Wells Fargo and go

02:19:56  13  somewhere else if you thought that would make a

02:19:58  14  difference?

02:20:01  15     A    Because we'd have to pay that balance.

02:20:05  16     Q    Is there anything else that would have been too

02:20:07  17  much trouble?

02:20:08  18     A    Well, just closing the account in general, and

02:20:10  19  then on top of other responsibilities that I have going

02:20:13  20  on in my life, I would have to really look for the right

02:20:21  21  bank and the right account that, you know, would be

02:20:26  22  suitable for me.

02:20:32  23     Q    Are you suggesting that you think that would

02:20:34  24  have been too difficult for you to do?

02:20:35  25     A    Not difficult, but I just -- it just did not

EXHIBIT C                                          EXHIBIT 1

I, the undersigned, a Certified Shorthand Reporter of the State of California, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were duly sworn; that a record of the proceedings was made by me using machine shorthand which was thereafter transcribed under my direction; that the foregoing transcript is a true record of the testimony given.

Further, that if the foregoing pertains to the original transcript of a deposition in a Federal Case, before completion of the proceedings, review of the transcript [ X ] was [   ] was not requested.

I further certify I am neither financially interested in the action nor a relative or employee of any attorney or party to this action.

IN WITNESS WHEREOF, I have this date subscribed my name.

Dated: _____SEP 3 6 2007_____

_____
LYNNE MARIE LEDANOIS
CSR No. 6811

EXHIBIT C                                    EXHIBIT 1

1                UNITED STATES DISTRICT COURT

2             FOR THE NORTHERN DISTRICT OF CALIFORNIA

3

4

5    JOSHUA P. ENDRES and KENDAHL
     BOOSTROM, as individuals, and
6    on behalf of all others
     similarly situated,
7
                    Plaintiffs,
8    vs.                                No.  C-06-7019 PJH

9    WELLS FARGO & COMPANY, et al.,

10                  Defendants.
     _____/
11            Deposition of
        AARON MICHAEL KRALJEV
12     Tuesday, September 11th, 2007

13

14

15

16

17

18   REPORTED BY:  JOAN MARTIN, CSR #6036

19

20              CERTIFIED
21              COPY

22
            ROBERT BARNES ASSOCIATES
23         760 Market Street, Suite 844
          San Francisco, California 94102
24              415) 399-1999

25

EXHIBIT D                                    EXHIBIT 1

1       A.   It's entirely possible.

2       Q.   And why do you think that?

3       A.   Just different laws and regulations.  They vary

4  by state.

5       Q.   Have you ever reviewed the disclosures for the

6  student credit card from state to state to see whether

7  they were different?

8       A.   In 2004?

9       Q.   Yes.

10      A.   No, I didn't.

11      Q.   How about 2003?

12      A.   No.  I did not.

13      Q.   2005?

14      A.   I may have reviewed them -- I'll say this.

15  These disclosures are printed, and they're printed by

16  the credit card group.  We don't have any control of the

17  release or the maintenance of them, and so we ensure

18  they deliver them to the stores.  But as far as their

19  content goes, the credit card group manages that.

20      Q.   So I take it that your marketing region does

21  not have the authority to change any of the disclosures?

22      A.   Correct.

23      Q.   You rely on the credit card group for that?

24      A.   Yes, sir.  For the credit card disclosures.

25      Q.   How about for the checking account disclosures?

EXHIBIT D                                    EXHIBIT 1

1    A.   Deposits would do that.

2    Q.   And where is deposits located?

3    A.   Deposit staff is in various locations.  I would

4    say the majority of the deposit staff is in either

5    Concord or San Francisco.

6    Q.   Concord, California?

7    A.   Yes, sir.

8    Q.   And does marketing region for the student

9    program have any authority to change any of the

10   disclosures for the checking accounts?

11   A.   No, sir.

12   Q.   For marketing materials put together for

13   customers by your division or your department, how do

14   you decide what disclosures to put into these materials,

15   and what disclosures are not required?

16   A.   Depending on what you're talking about, it

17   triggers certain disclosures.  So if you're talking

18   about -- it depends.  You know.  If you're talking about

19   a certain type of product, the product may trigger

20   disclosure.  If you talk about it in a certain way, it

21   may trigger it even more.  Those disclosures were given

22   by with the product groups.  And if we, for some reason,

23   missed a disclosure, that would get caught in the legal

24   approval process.

25   Q.   So if your boss said, hey, let's make a

EXHIBIT D                          EXHIBIT 1

1          I, the undersigned, hereby certify that the witness

2     in the foregoing deposition was, by me, duly sworn to tell the

3     truth, the whole truth and nothing but the truth in the

4     within-entitled cause.

5

6          That said deposition was taken in shorthand by

7     me, a Certified Shorthand Reporter and a disinterested person,

8     at the time and place therein stated, and that the testimony

9     of said witness was hereafter reduced to typewriting, by

10    computer, under my direction and supervision.

11

12         I further certify that I am not of counsel or

13    attorney for either or any of the parties of the said

14    deposition, nor in any way interested in the event of this

15    cause, and that I am not related to any of the parties

16    thereto.

17

18         In witness whereof, I have hereunto set my hand this

19    ___ day of _September_, 2006.

20

21

22                                    _Joan Martin_

23                              JOAN MARTIN, CSR 6036

24

25

EXHIBIT D                                      EXHIBIT 1

1  Sonya D. Winner, SB # 200348
   David M. Jolley, SB # 191164
2  Stephen E. George, SB # 244512
   COVINGTON & BURLING LLP
3  One Front Street
   San Francisco, CA 94111
4  Telephone:     (415) 591-6000
   Facsimile:     (415) 591-6091
5  swinner@cov.com

6  Attorneys for Defendants
   WELLS FARGO BANK, N.A.

7

8

9              UNITED STATES DISTRICT COURT

10         FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12  JOSHUA P. ENDRES and KENDAHL            Civil Case No.: C-06-7019 PJH
    BOOSTROM, as individuals, and on behalf
    of all others similarly situated,         CLASS ACTION
13
         Plaintiffs,                           RESPONSE AND OBJECTIONS OF
14                                             WELLS FARGO BANK, N.A. TO
         v.                                    PLAINTIFFS' REQUEST FOR
15                                             PRODUCTION OF DOCUMENTS
    WELLS FARGO & COMPANY; WELLS              [Set Two]
16  FARGO BANK, N.A.; and DOES 1 through
    125,
17
         Defendants.
18

19         Pursuant to Rule 34 of the Federal Rules of Civil Procedure, defendant Wells

20  Fargo Bank, N.A. ("Wells Fargo Bank") responds to plaintiffs' Request for Production of

21  Documents (Set Two) as follows:

22         **GENERAL OBJECTIONS TO ALL DOCUMENT REQUESTS**

23         1.     Wells Fargo Bank's responses herein are based only upon facts known at

24  this time. Discovery in this matter is ongoing, and during the course of subsequent discovery,

25  Wells Fargo Bank may become aware of supplemental, additional, or other responsive

26  documents. Wells Fargo Bank reserves the right to update, amend, or supplement these

27  responses and its document production. In addition, these objections are made without

28  prejudice to Wells Fargo Bank's right to present further additional or other evidence or

WELLS FARGO BANK'S RESPONSES TO PLAINTIFFS'
REQUEST FOR PRODUCTION OF DOCUMENTS (SET
TWO)

EXHIBIT E                                              EXHIBIT 1

1    to the extent this request seeks electronic versions of documents where paper documents and/or
2    screen shots should suffice – Wells Fargo Bank will not produce electronic versions of
3    documents that are unduly burdensome or impossible to produce.
4              Subject to these objections and limitations, Wells Fargo Bank will produce non-
5    privileged documents (in its possession, custody, or control, and that can be located by means of
6    a reasonably diligent search) showing those parts of the Sales Vision Teller Platform that are
7    relevant to student checking accounts and credit card accounts, and that were used by Wells
8    Fargo Bank employees from January 1, 2002, to the present.
9    **REQUEST NO. 31:**
10             Please produce each electronic and hard copy edition or version of the Incentive
11   Compensation Plan (ICP) from 2002 to the present.
12   **RESPONSE:**
13             Wells Fargo Bank incorporates each of its General Objections into its response as
14   if set forth verbatim herein.  Wells Fargo Bank further objects to the extent that this request
15   seeks documents that are not relevant to a claim or defense of any party and not reasonably
16   calculated to lead to the discovery of admissible evidence.  Wells Fargo Bank further objects to
17   the extent that this request seeks the production of confidential or proprietary documents.  Wells
18   Fargo Bank further objects that the use of the undefined term "Incentive Compensation Plan"
19   renders this request so vague and ambiguous that any further response is impossible.
20   **REQUEST NO. 32:**
21             Please produce each edition or version of marketing brochures for the Wells
22   Fargo Student Visa Card from 2002 to the present.
23   **RESPONSE:**
24             Wells Fargo Bank incorporates each of its General Objections into its response as
25   if set forth verbatim herein.  Wells Fargo Bank further objects to this request as vague and
26   ambiguous in its use of the terms "marketing brochures," "Wells Fargo Student Visa Card," and
27   "edition or version."  For purposes of this response, Wells Fargo Bank understands "edition or
28   version" to mean the final distinct version of such documents that Wells Fargo Bank made

1  available to the general public from 2002 to the present.  Wells Fargo further objects that this

2  request is overly broad and unduly burdensome.

3        Subject to these objections and limitations, Wells Fargo Bank will produce each

4  distinct version of the marketing brochures (as it understands that term) for its student or college

5  credit card accounts that were made available to the general public from January 1, 2002, to the

6  present that is in Wells Fargo Bank's possession, custody, or control, and that can be located by

7  means of a reasonably diligent search.

8  **REQUEST NO. 33:**

9        Please produce each edition or version of the Wells Fargo new checking account

10  jacket (Exhibit 2 of the deposition of Linda Caldwell) from 2002 to the present.

11  **RESPONSE:**

12        Wells Fargo Bank incorporates each of its General Objections into its response as

13  if set forth verbatim herein.  Wells Fargo Bank further objects to this request as vague and

14  ambiguous in its use of the term "edition or version."  For purposes of this response, Wells

15  Fargo Bank understands "edition or version" to mean the final version of such documents that

16  Wells Fargo Bank made available to the general public from 2002 to the present.  Wells Fargo

17  Bank further objects to the extent this request seeks documents that are not relevant to any of the

18  claims or defenses at issue in this litigation.  Wells Fargo further objects that this request is

19  overly broad and unduly burdensome.

20        Subject to these objections and limitations, Wells Fargo Bank will produce each

21  distinct version of the Wells Fargo new checking account jacket of the type marked as Exhibit 2

22  of the deposition of Linda Caldwell that it made available to the general public from January 1,

23  2002, to the present  that is in its possession, custody, or control, and that can be located by

24  means of a reasonably diligent search.

25  **REQUEST NO. 34:**

26        Please produce each edition or version of Consumer Account Agreement from

27  2002 to the present.

28

EXHIBIT 1

# COVINGTON & BURLING LLP

| | | |
|---|---|---|
| ONE FRONT STREET | SAN FRANCISCO | DAVID M. JOLLEY |
| SAN FRANCISCO, CA 94111 | WASHINGTON | TEL 415.591.7079 |
| TEL 415.591.6000 | NEW YORK | FAX 415.955.6679 |
| FAX 415.591.6091 | LONDON | DJOLLEY @ COV.COM |
| WWW.COV.COM | BRUSSELS | |

November 5, 2007

Richard D. McCune
McCune & Wright LLP
2068 Orange Tree Lane, Suite 216
Redlands, CA 92374

Re:   _Endres v. Wells Fargo_, Case No. C-06-7019 PJH

Dear Mr. McCune:

Enclosed is a verification for Wells Fargo Bank's interrogatory responses in the above-referenced action.

Also enclosed are documents Bates labeled WFB-E 10136–WFB-E 10141. Although none of plaintiffs' individual document requests called for the production of these educational brochures, Wells Fargo Bank is nonetheless making this production voluntarily and in good faith. Wells Fargo Bank has already completed its production of documents in response to plaintiffs' written document demands.

Very truly yours,

David M. Jolley

Enclosures

EXHIBIT F

EXHIBIT 1

1  Case:  ENDRES v. WELLS FARGO BANK
   Case No.: C-06-7019 PJH
2                          PROOF OF SERVICE

3  STATE OF CALIFORNIA
   COUNTY OF SAN BERNARDINO
4

5          I am employed in the County of San Bernardino, State of California.  I am over the age of 18
   years and not a party to the within action; my business address is 2068 Orange Tree Lane, Suite 216,
6  Redlands, California, 92374.

7          On December 12, 2007, I served the foregoing document described as **PLAINTIFFS' REPLY
8  TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
   CERTIFICATION;  DECLARATION OF RICHARD D. McCUNE; EXHIBITS** on the interested
9  parties through their respective attorneys of record in this action, by placing a ☒ true copy or ☐
   original thereof enclosed in sealed envelopes addressed as follows:
10

11 **Sonya D. Winner, Esquire**                    **Attorneys for Defendants**
   **David M. Jolley, Esquire**
12 **COVINGTON & BURLING, LLP**
   **One Front Street**
13 **San Francisco, CA  94111**
   **Telephone:  (415) 591-6000**
14 **Facsimile:  (415) 591-6091**
15

16 **METHOD OF SERVICE**:

17 [ ]    **(BY MAIL)**    I am readily familiar with the firm's business practice for collection and processing
                          of correspondence for mailing.  Under that practice, I caused such envelopes with
18                        postage thereon fully prepaid to be placed in the United States mail at Redlands,
                          California.
19 [ ]    **(BY E-MAIL)**
20                        By transmitting it to the following individuals by electronic mail:
                          Sonya D. Winner:  SWinner@cov.com
21                        David M. Jolley:  djolley@cov.com
22 [ X ]  **(BY FAX)**    I caused such documents to be transmitted by facsimile to the offices of
                          the addressee(s).  The facsimile machine used complied with California
23                        Rules of Court, rule 2003, and no error was reported by the machine.
   [ X ]  **(BY OVERNIGHT DELIVERY)**  I caused such document to be delivered by overnight delivery
24                        to the offices of the addressee(s).
25

26        I declare that I am employed in the office of a member of the bar of this court at whose direction
   the service was made.  Executed on the above-referenced date at Redlands, California.
27

28                                          _____
                                                    Ann Marie Smith

   Proof of Service

                                                                                    **EXHIBIT 1**